## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

              Plaintiff,

v.                                    **Case No. 3-16-cr-30075-SPM**

JEFFREY ELLIOTT,

              Defendant.

## MEMORANDUM AND ORDER

**McGLYNN, Circuit Judge:**

Pending before the Court is an amended motion for reduction in sentence pursuant 18 U.S.C. § 3582 (c)(1)(A) brought by Jeffrey Elliott ("Elliott"), pursuant to the First Step Act of 2018 (Doc. 43). Within the motion, Elliott seeks a reduction in his sentence to time-served, or in the alternative, to home confinement. For the reasons set forth below, the Court denies the Motion.

### FACTUAL & PROCEDURAL BACKGROUND

On June 22, 2016, Elliott was indicted by a grand jury on one count of unlawful distribution of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Doc. 1). On June 28, 2016, Elliott was arraigned on this charge, the office of the federal public defender was appointed, a pretrial discovery and motion practice order was entered, and the jury trial was scheduled for 8/29/16 (Docs. 6 - 9). On June 29, 2016, Daniel Cronin ("Cronin") entered his appearance in this matter (Doc. 13). On August 5, 2016, a change of plea hearing was scheduled for August 9, 2016 (Doc. 14). On August 9, 2016, Elliott entered a plea of guilty and

stipulated to the facts in the case (Docs. 16, 17).  Sentencing was scheduled for November 17, 2016 (Doc. 16).

On October 6, 2016, a sealed presentence investigation report ("PSI") was filed with the notation that any objections were due within 14 days (Doc.  22). A revised PSI was filed on October 31, 2016 (Doc. 25). On November 17, 2016, Elliott was Committed to the U.S. Bureau of Prisons ("BOP") for 96 months, to be followed by three years of supervised release (Doc. 146). This Court determined that a variance below the advisory guideline range of 151 to 188 months was justified (Sealed Doc. 31).

On October 26, 2020, Elliott filed a *pro se* motion in this court for compassionate release under the First Step Act (Doc. 34). On October 28, 2020, the office of the federal public defender was appointed; however, on November 10, 2020, the office sought leave to withdraw and requested the appointment of CJA counsel (Docs. 36 – 38). On November  10, 2020, the Court granted the motion and on December 2, 2020, Paul Sims entered his appearance as CJA counsel (Docs. 39, 42).

On December 18, Elliott filed his amended motion to alter judgment pursuant to 18 U.S.C. §3582 (Doc. 43). Within his motion, Elliott refers to the COVID-19 pandemic and claims to fall into several categories that put him at high risk of suffering severe illness, were he to become infected (*Id.*, p.2). He is African American and asserts a history of hypertension and diabetes (*Id.).* Elliott is currently incarcerated at FPC-Duluth, with a projected release date of 4/22/2023.[1]

---

[1] As of March 21, 2021, per https://www.bop.gov/inmatelocator/.

On January 8, 2021, the government filed its sealed response (Doc. 45).

## LEGAL STANDARD

Under the First Step Act, inmates are authorized to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). A defendant may be eligible for compassionate release if the Court finds "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The Court also must find that the requested sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Congress has tasked the Sentencing Commission with compiling "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission has specified that certain circumstances surrounding the inmate's medical condition, age, and family situation will constitute extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13. The Sentencing Commission also gives the Director of the Federal Bureau of Prisons discretion to distinguish other grounds that could be extraordinary and compelling enough to merit a sentence reduction, either on their own or in combination with another listed condition. *See id.* at cmt. n.1(D).

Courts have also, in certain instances, taken it upon themselves to identify non-enumerated grounds constituting extraordinary and compelling reasons for compassionate release, even where the Bureau of Prisons has not done so. *See, e.g.*, *United States v. Halliburton*, 2020 WL 3100089 (C.D. Ill. June 11, 2020)(finding

extraordinary reasons where defendant had underlying health problems in conjunction with the COVID-19 pandemic); *United States v. Coles*, 2020 WL 1976296 (C.D. Ill. April 24, 2020); *United States v. Lewellen*, 2020 WL 2615762 (N.D. Ill. May 22, 2020) (Noting court has joined "vast majority" of district courts in looking past "guideposts" of §1B1.13 criteria to construe what constitutes extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) (quoting *United States v. Cardena*, No. 09-CR-0332 (-11), slip op. at 6 (N.D. Ill. May 15, 2020) (ECF No. 1890)).

If an inmate can show that one of the eligibility criteria is applicable, a court must then assess whether a reduction would be appropriate under the statutory sentencing factors described in 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.13. Lastly, a court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). Defendant bears the burden of proving entitlement to relief under 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Gold,* 459 F.Supp.3d 1117 (N.D. Ill. May 6, 2020)

## ANALYSIS

### 1. **Extraordinary and Compelling Reasons**

District courts have a limited ability to modify an imposed term of imprisonment. 18 U.S.C. § 3582 (c)(1)(A). Indeed, defendant must first exhaust all administrative rights with the BOP before bringing a motion. *Id.* In this case, the only applicable ground for modification is after a finding that: "(i) extraordinary and compelling reasons warrant such a reduction" *Id.*

General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the

Sentencing Commission's policy statement on compassionate release. *Gold,* 459 F.Supp.3d at 1120. What does constitute extraordinary and compelling reasons has been the topic of application notes, which lists three such examples that justify a sentence reduction:

> (1) A terminal illness or other serious medical condition from which he is not expected to recover;
>
> (2) Advanced age, or at least 65 years old;
>
> (3) Death or incapacitation in his immediate family, which would leave him the only caregiver for a child, spouse or partner.

Elliott does not satisfy any of the factual predicates listed by the Sentencing Commission as constituting "extraordinary and compelling reasons" justifying compassionate release. He is a 37 year old male who has not been diagnosed with a terminal illness or other serious medical condition and he does not indicate any family circumstances calling for him as a caregiver.

## 2. Medical Condition

Elliott does indicate certain underlying medical conditions that "put him at a high risk of suffering severe illness, including death, from COVID-19", including a history of hypertension and diabetes (Doc. 43, pp. 2-3). However, other than statistics, he has provided no information to support the contention that these conditions severely increase *his* vulnerability to COVID-19 to the point that compassionate release might be warranted (emphasis added).

Elliott has attached limited medical records, but the government has produced the records for the years 2016-2021 (Doc. 45-7, 8, 9). While the records confirm a history of hypertension, it does not appear as if he is on any medications or receiving

any treatment for the malady. As for the diabetes, it is also noted in the records along with first degree relative with the history, but it does not appear as if he receives any special treatment nor does he have any special dietary needs or restrictions.

The medical records show that Elliott tested positive for COVID-19 November 24, 2020 (Doc. 43-1B). Additional records indicate that as of December 4, 2020, he had completed his quarantine (Doc. 45-8). A notation on that date indicates that Elliott was asymptomatic, although he claims to have suffered from body aches … chills … sweats … shortness of breath … and he coughed up blood (Doc. 43, pp. 20, 21). There are no records for after December 4, 2020, but Elliott has provided records that show he complained of symptoms between November 29, 2020 and December 1, 2020 (Doc. 48-1).

In the unusual circumstances of the COVID-19 pandemic, courts have been willing in certain instances to look beyond the enumerated list of extraordinary and compelling reasons listed by the Sentencing Commission, particularly where underlying medical conditions make defendants particularly susceptible to COVID-19. Here, while Elliott does have certain underlying medical conditions that could exacerbate his susceptibility to COVID-19, it is not clear that these conditions severely increase his vulnerability to COVID-19 to the point that compassionate release might be warranted. In other words, "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." United States v. Sheppard, No. 09-30001, 2020 WL 2128581, at *2 (C.D. Ill. May 5, 2020). If that was all it took, the prisons would be empty.

### 3.  Bureau of Prisons

Elliott is incarcerated at Duluth-FPC but does not provide any information specific to that institution. Instead, he directs his complaints against the entire BOP system claiming that COVID-19 poses acute risks to inmates and correctional staff (Doc. 43, pp. 4-6). To support this contention, Elliott cites to the Centers for Disease Control and Prevention and the New York Times (*Id.*, p. 5). Elliott also refers to the BOP website, but indicates that it was last visited on April 3, 2020, which is almost one year ago (*Id.*).

The government's response provides more recent information on the BOP response to COVID-19, which has been working hard to protect all inmates and staff from contracting the virus at its facility (Doc. 45, p. 9). A protocol was established in 2012, and on March 13, 2020, BOP began following its action plan (Doc. 45, p. 10). The following are relevant portions of the action plan as set forth on the BOP website. [2]All facilities test regularly to catch any outbreaks quickly. All staff and inmates have been issued face masks and are strongly encouraged to wear an appropriate face covering when social distancing cannot be achieved (*Id.* at 15). Group gatherings are limited and numerous restrictions have been established with respect to access to the commissary, laundry, showers, telephones and computers. Additionally, each facility may have more limitations depending on the amount of cases at that facility.

With respect to Dututh-FPC, where defendant is currently incarcerated the government provided information from the website as of the date of filing its response

---

[2] See https;//www.bop.gov/coronavirus/covid19

on January 8, 2021 (Doc. 45, p. 10). At that time, one inmate was positive, there were zero deaths, 198 inmates had recovered and 45 staff had recovered (*Id.*). As of March 22, 2021, there are currently no positive cases at Duluth-FPC.[3] Furthermore, the data shows that 53 staff members and 43 inmates have been fully inoculated at Duluth-FPC, with the BOP prepared to receive and administer to all willing inmates as soon as it is made available.[4]

Elliott has provided no information as to how, were he released, travelling from Minnesota to Illinois will be guaranteed to be COVID-19 safe and/or safer than the confines of Duluth-FPC. Even courts that have expressly taken a "liberal view" of the Sentencing Commission's policy statements have denied motions brought by inmates housed in facilities with no evidence of widespread transmission and whose individual risk factors were shared by "a host of other prisoners". *Gold*, 459 F.Supp at 1121.

### 4.  Threat to Community

Even if the Court were to find that Elliott's medical conditions, alone or in conjunction with the COVID-19 pandemic, constituted extraordinary and compelling reasons for a sentence reduction, the § 3553(a) factors and the requirement that the defendant not be "a danger to the safety of any other person or to the community" weigh against releasing him. This Court would be remiss if it did not look at defendant's criminal history to determine whether he remains a threat to the community in its inquiry as to whether a sentence should be modified.  See Federal

---

[3] See https://www.bop.gov/coronavirus/covid19
[4] This information was also obtained for the website, which indicates full time staff is inoculated first as they come and go from the facilities and "present a higher vector for transmission".

Sentence Guideline, 1B1.13 (compassionate release allowed only when "the defendant is not a danger to the safety of any other person or the community).

Elliott has an extensive criminal history that started at the age of 18 with misdemeanor offenses and escalated into felony offenses at the age of 21 (Sealed Doc. 25). In addition to drug offenses, Elliott was also convicted of two domestic battery offenses (*Id.*). The present offense involved the distribution of cocaine mixture while serving a period of probation (*Id.*) On January 2, 2020, his recidivism level was reduced from high risk to medum risk, where he remains, which indicates that he is not a great candidate for release and is still a danger to the community (Doc. 45-4). He was last sanctioned by the BOP on May 22, 2017 for possessing unauthorized item (Doc. 45-3).

Based upon his current recidivism rate and his criminal history, Elliott does not appear to be a viable candidate for sentencing modification. To the contrary, his continued imprisonment is warranted. Additionally, to allow Elliott to be released after serving less than two-thirds of his an already reduced 96-month sentence would fail to provide just punishment for his offenses. See 18 U.S.C. § 3553(a)(2)(A). The Court is concerned that such a short sentence would fail to deter Richardson from further criminal conduct and, thus, would place the community at risk of additional crimes. See 18 U.S.C. § 3553(a)(2)(B)-(C).

### 5. Home Confinement

In the alternative, Elliott seeks home confinement (Doc. 43). However, BOP has sole discretion to transfer an inmate to home confinement (Doc. 45, p. 15).  This Court has previously addressed this issue and has held, "It is not the Court's role to

make determinations as to home confinement". *United States v. Redmond,* 14-30109,
2020 WL 2063936 (S.D. Ill. 4/29/2020).  As such, this is a moot argument.

## CONCLUSION

The fact that Elliott has already survived COVID-19 is not a dispositive factor
in its analysis. Instead, this Order is based upon the totality of the circumstances
including his entire medical history, the Section 3553(a) factors, the nature and
circumstances of the offense and the history and characteristics of the defendant,
which all weigh in favor of denying Elliott's motion. *See* 18 U.S.C. § 3553(a)(1).

In light of the foregoing, this Court cannot find extraordinary and compelling
reasons justifying compassionate release nor can this Court determine that Elliott
would not present a threat if released. As such, the Amended Motion for Reduction
in Sentence pursuant to 18 U.S.C. § 3582 (C)(1)(A)(Doc. 43) is **DENIED in its
entirety**.

**IT IS SO ORDERED.**

**DATED:   March 23, 2021**

> **/s/ Stephen P. McGlynn**
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**